**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KEVIN HAROLD CLEAVER, | Case No. EDCV 14-0829 SS |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Kevin Cleaver ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying his application for Disability Insurance Benefits and Supplemental Security Income. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States

\\

Magistrate Judge. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

### PROCEDURAL HISTORY

Plaintiff applied for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") on May 23, 2008. (Administrative Record ("AR") 250-258). Plaintiff alleged a disability onset date of March 20, 2008. (AR 252). The Agency denied Plaintiff's application on September 18, 2008, and upon reconsideration on November 12, 2008. (AR 136, 141). On November 20, 2008, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 147). ALJ Keith Dietterle ("ALJ Dietterle") conducted the hearing on July 22, 2010. (AR 105). On December 22, 2010, the ALJ Dietterle determined that Plaintiff was disabled for the closed period of March 20, 2008, through July 31, 2009. (AR 105). However, the ALJ Dietterle concluded that after August 1, 2009, Plaintiff retained the residual functional capacity (RFC) to perform a full range of sedentary work. (AR 111).

Plaintiff filed a timely request for review of the ALJ Dietterle's decision on February 24, 2011.[1] (AR 188). On May 22, 2012, the Appeals Council (the "Council") affirmed the ALJ

---

[1] While this appeal was pending, Plaintiff filed new DIB and SSI applications, this time alleging a disability onset date of May 16, 2011. (AR 271, 279).

Dietterle's finding of disability within the closed period. (AR 122-23). However, the Council vacated the ALJ's decision as it pertained to Plaintiff's alleged disability after August 1, 2009, and remanded the matter for further proceedings. (Id.). The Council noted that the ALJ did not provide an analysis of Plaintiff's transferable skills, as required by Medical-Vocational grid rule 201.11. (AR 122). Therefore, the Appeals Council directed the ALJ to obtain evidence from a Vocational Expert ("VE") to show whether Plaintiff retained skills transferable to sedentary work. (Id.).

ALJ Lynn Ginsberg (the "ALJ") conducted a hearing following the Appeals Council remand on October 30, 2012 (the "ALJ Hearing" or "ALJ Ginsberg"). (AR 44-97). On November 30, 2012, the ALJ issued a decision denying DIB and SSI.[2] (AR 19-35). On January 23, 2014, the Council denied Plaintiff's request for review. (AR 4-6). On May 8, 2014, Plaintiff filed the instant action. (Dkt. No. 3).

### III.

### FACTUAL BACKGROUND

Plaintiff was born on August 8, 1960. (AR 252). He was forty-seven years old as of his initial disability onset date and fifty-two years old at the time of the ALJ Hearing. (AR 44,

---

[2] The ALJ specifically associated Plaintiff's May 16, 2011, claims with the claim on remand and rendered a decision on all of the claims. (AR 22).

252). Plaintiff has a high school equivalency diploma (AR 122) and can communicate in English. (AR 33). Plaintiff worked as a heavy duty truck mechanic from 1980 until March 20, 2008. (AR 300). From April 22, 2010, until May 16, 2011, Plaintiff worked as an automotive test driver. (AR 357). Plaintiff first sought treatment for back pain in 2003. (AR 301).

**A.   Medical History And Physicians' Opinions**

   **1.   Na'Imah Powell, M.D.**

Na'Imah Powell, M.D., began treating Plaintiff in November of 2007. (AR 301-02). Dr. Powell diagnosed Plaintiff as morbidly obese[3] and with chronic back pain. (AR 464-65). Plaintiff's medications included Vicodin, Soma, and Aleve.[4] (AR 465). On March 24, 2008, an x-ray revealed a possible left femoral neck fracture. (AR 477). However, due to Plaintiff's weight, Dr. Powell's conjecture could not be confirmed by an MRI. (AR 469). On April 27, 2008, a CT scan ordered by Dr. Powell revealed no abnormalities of the left hip or pelvis. (AR 467).

On April 1, 2009, Plaintiff underwent laparoscopic gastric bypass surgery in order to lose weight. (AR 632). By November 16, 2009, Plaintiff had lost more than 150 pounds. (AR 649).

---

[3] On January 22, 2008, Plaintiff weighed "over 400" pounds. (AR 465).
[4] Vicodin is a brand name for hydrocodone, an opiate. Soma is a muscle relaxant. Aleve is a non-prescription analgesic. See, MedlinePlus,http://www.nlm.nih.gov/medlineplus/druginformation and enter medication name (last visited March 19, 2015).

1   Plaintiff still complained of lower back pain that "moderately
2   limit[ed]" his activities. (Id.). However, by January 18, 2010,
3   Dr. Powell was able to temporarily discontinue narcotics. (AR
4   653). On April 8, 2010, Dr. Powell noted Plaintiff was "[d]oing
5   well. He is going back to work." (AR 656).

7   On March 24, 2012, Plaintiff went to the emergency room of
8   Riverside County Regional Medical Center in order to get his pain
9   medications refilled and to be referred to a spine clinic. (AR
10  680). The physician on duty prescribed Vicodin and issued the
11  referral. (AR 681).

13  **2.   Bryan H. To, M.D.**

15  Consultative physician Bryan H. To, M.D., conducted an
16  internal medicine examination of Plaintiff on August 17, 2012.
17  (AR 747). Plaintiff weighed 270 pounds at the time of this
18  examination. (AR 748). Although Plaintiff reported back pain,
19  Dr. To found Plaintiff able to raise his legs normally from a
20  supine or sitting position. (AR 751). Dr. To noted some
21  decreased range of motion, but palpation along the spine did not
22  cause Plaintiff pain or spasm. (AR 750). Dr. To judged
23  Plaintiff capable of "frequent" bending, kneeling, stooping,
24  crawling and crouching. (AR 751). He opined that Plaintiff
25  could push, pull, lift or carry twenty pounds occasionally and
26  ten pounds frequently. (Id.).
27  \\
28  \\

**B.  Vocational Expert Testimony**

Vocational Expert Malcolm Brodzinksy testified regarding the existence of jobs in the national economy that Plaintiff could perform given his physical limitations. (AR 71-94). The VE first described Plaintiff's past relevant work. (AR 73-74). The VE opined that Plaintiff's past jobs as a supervisory truck mechanic and an automotive test driver qualified as "heavy" work.[5] (Id.).

The ALJ then posed several hypotheticals to the VE. The ALJ asked if a hypothetical individual with Plaintiff's background and residual functional capacity could perform Plaintiff's past work. (AR 77-78). The VE opined that the individual could not perform any of Plaintiff's past work, and had no transferable skills. (AR 78). However, the individual could perform "the full range of unskilled light work," totaling more than 1,500 occupations. (Id.). The ALJ then adjusted the hypothetical in several ways. (AR 79-84). In all of these cases, the VE again opined that Plaintiff would find significant numbers of positions available. (Id.).

\\
\\

---

[5] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. §§ 404.1567 and 416.967. The VE noted that, although Plaintiff performed his work as a test driver at the "heavy" level, Plaintiff did not receive enough training to perform this job as it is performed in the national economy. (AR 77).

**C.   Plaintiff's Testimony**

   **1.   Testimony Before The ALJ**

Plaintiff testified that, although he lived by himself, he frequently visited his girlfriend for about a week at a time. (AR 55-56). Plaintiff drove forty minutes for these visits. (AR 56). Plaintiff and his girlfriend watched television and movies and played with her four dogs, each of which weighed about fifty pounds. (AR 59).

Plaintiff's nephew assisted Plaintiff with household cleaning. (AR 57). Plaintiff could prepare frozen foods on his own. (AR 58). Plaintiff was able to launder and change his own sheets, but had to rest while doing so. (AR 57). He could stand for five to ten minutes and walk up to three or four blocks before needing to sit. (AR 58). Plaintiff did his own grocery shopping, accompanied by his girlfriend or nephew. (AR 63). He used a computer at home and at his girlfriend's house. (AR 59-60). However, he could no longer participate in his former hobbies, including working on old cars. (Id.). Plaintiff also testified that he could no longer do any mechanical work. (Id.).

In January 2012, Plaintiff flew to Utah following his sister's death. (AR 60). Plaintiff brought a carry-on bag weighing twenty to twenty-five pounds on the trip. (AR 61). Plaintiff was not sure of a maximum weight he could lift, but was sure that he could lift a twelve-pack of soda. (Id.).

1    Plaintiff described his work as an automotive test driver,
2 which began on April 22, 2010 and continued for more than a year.
3 (AR 50).  This work involved accelerating automobiles to 100
4 miles per hour on an oval test track, breaking to zero, and
5 accelerating again repeatedly.  (AR 51).  Drivers also tested
6 cars in rough terrain.  (Id.).  Drivers worked all night and had
7 to lift "water dummies" weighing forty or fifty pounds in and out
8 of cars.  (Id.).  Plaintiff testified that he had to miss work
9 three times due to back pain, and one absence lasted for two
10 months.  (AR 50-52).  He finally quit after judging his pain too
11 severe to continue.  (AR 51).

13   Plaintiff testified that he weighed 272 pounds at the time
14 of the ALJ Hearing.  (AR 53).  He was receiving treatment at a
15 spine clinic and expected to receive an epidural injection that
16 week.  (Id.).  Plaintiff regularly experienced numbness in his
17 legs, hands and fingers.  (AR 66).  Plaintiff sometimes used a
18 cane, but it had not been prescribed.  (AR 54-55).  Plaintiff
19 explained that he had visited a chiropractor in the past, but
20 could no longer afford to do so.  (AR 65).  Plaintiff took
21 several prescription pain medications daily.  (AR 54).  Plaintiff
22 avoided driving while taking these medications, which made him
23 feel "high."  (AR 69).

25   **2.   Statements From Plaintiff's 2011 Function Report**

27   On September 17, 2011, Plaintiff completed an Agency
28 function report in which he described his daily activities.  (AR

8

373-380). Plaintiff wrote that after waking up, he ate breakfast, rested, and took his medication. (AR 373). Plaintiff explained that he did "little chores" in the afternoon, and then rested before spending time sitting outside. (Id.). Plaintiff tried to perform as many chores as possible before his back became too painful. Plaintiff stated that he took his medications two to three times per day. (Id.).

Plaintiff noted that he cared for two small dogs, which he fed and took outside unless he was sore, in which case his nephew helped. (AR 374). Plaintiff could not stand long enough to cook complicated meals but was able to make frozen dinners and sandwiches. (AR 375). He could dust, wipe counters and sweep his house, spending twenty-five to thirty minutes on each task. (Id.). He could do laundry but could not do household repairs or yard work. (AR 375-76). Plaintiff could shop for groceries and household supplies. (AR 376). Plaintiff could walk one to two blocks before needing to rest for five to ten minutes. (AR 378).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, "a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months." Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C.

§ 423(d)(1)(A)). The impairment must render the claimant "incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To determine whether a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps and their related inquiries are as follows:

    (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

    (2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

    (3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

    (4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

    (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1099, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

\\
\\
\\

## V.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not under a disability within the meaning of the Social Security Act after August 1, 2009. (AR 22). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since August 1, 2009.[6] (AR 25). At step two, the ALJ found that Plaintiff had the severe impairments of obesity, post status gastric bypass in April 2009, umbilical hernia, lumbar spine osteoarthritis, chronic back pain and high blood pressure. (Id.). However, at step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926).[7] (Id). The ALJ noted that "no treating or examining physician recorded findings equivalent in severity to the criteria of any listed impairment." (Id.). The ALJ then found that Plaintiff had the following RFC:

> [Plaintiff] has had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he can do frequent postural activities such as climbing ladders, ropes,

---

[6] The ALJ opined that Plaintiff's work as a test driver during the alleged disability period qualified as an unsuccessful work attempt, and not as "substantial gainful activity." (AR 25).

[7] A physical or mental impairment is considered "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520

12

       and scaffolds, climbing ramps, balancing, stooping, kneeling, crouching, and crawling; he can do frequent agility tasks such as walking on uneven terrain and working at heights; and he can have no to rare exposure to heavy moving machinery.

(AR 26). The ALJ noted that she had considered all of Plaintiff's symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence, pursuant to 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. (Id.). The ALJ also considered opinion evidence as required by 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. (Id.).

    The ALJ found that the claimant's subjective allegations were "less than fully credible." (AR 32). In making this finding, the ALJ gave great weight to Plaintiff's description of his daily activities, and found that Plaintiff's "assertions [regarding his symptoms] are in excess of the medical and other evidence of record." (Id.). The ALJ noted Plaintiff's statement that he could drive forty minutes to his girlfriend's house. (AR 28). Plaintiff was also able to fly to Utah with a twenty-pound carry-on bag. (Id.). The ALJ opined that Plaintiff's ability to do "heavy" work as a test driver for several months, though ultimately unsuccessful, also called the severity of his symptoms into question. (Id.). Finally, the ALJ reasoned that Plaintiff's conservative treatment suggested that his symptoms and limitations were not as severe as alleged. (AR 27). This

treatment plan, including pain medications, muscle relaxants, blood pressure medication and chiropractic treatment, had been "relatively successful" in relieving Plaintiff's symptoms. (AR 28).

At step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work as defined by 20 C.F.R. §§ 404.1565, 416.965. (AR 32). However, based on the vocational expert's testimony, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy. (AR 33-34). Therefore, the ALJ concluded that Plaintiff had not been disabled since August 1, 2009. (AR 34).

## VI.
### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson

v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id.   To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).   If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VII.

## DISCUSSION

Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's subjective complaints and assess his credibility. (Memorandum in Support of Plaintiff's Complaint ("MSPC") at 4). According to Plaintiff, the ALJ also erred by failing to articulate sufficient reasons for rejecting Plaintiff's subjective testimony. (MSPC at 6).  The Court disagrees.  The ALJ's decision contains an extensive discussion of clear and convincing reasons for rejecting Plaintiff's subjective testimony, supported by substantial evidence.

When assessing a claimant's credibility, the ALJ must engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112

15

(9th Cir. 2012). Initially, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. (Id.). If such evidence exists, the ALJ must make specific credibility findings in order to reject the claimant's testimony. (Id.). The ALJ may use "ordinary techniques of credibility evaluation" during this inquiry. Smolen, 80 F.3d at 1284. The ALJ may also consider any inconsistencies in the claimant's conduct and any inadequately explained or unexplained failure to pursue or follow treatment. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Additionally, the ALJ may use evidence of the claimant's ability to perform daily activities that are transferrable to the workplace to discredit his testimony about an inability to work. Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999). To determine whether the record presents "substantial evidence" to support or reject the Commissioner's findings, the court considers "the record as a whole." Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

Plaintiff did present medical evidence of impairment. However, the ALJ articulated specific, clear and convincing reasons for discounting Plaintiff's testimony about the severity of his symptoms. The ALJ cited Plaintiff's daily activities as a reason that his testimony was unreliable. The ALJ noted that Plaintiff was able to walk two to three blocks before requiring a break, to watch television, use a computer, lift a twelve pack of soda, bathe himself and go food shopping. (AR 27). Plaintiff

was able to drive forty minutes to his girlfriend's house. (AR 28). Finally, the ALJ opined that Plaintiff's ability to fly to Utah with carry-on luggage indicated that Plaintiff's symptoms were not as severe as he alleged. (AR 28).

The Court finds that Plaintiff's daily activities undermine his testimony regarding disabling pain and fatigue. On his function report, Plaintiff stated that he performs such chores as going to the post office, grocery shopping, and visiting doctors' offices, showing his independence. (AR 373). Plaintiff also stated that he performed some household chores, such as dusting, wiping counters and sweeping. (AR 375). Plaintiff described driving a car and visiting with friends and family a "couple of times a week." (AR 377).

The ALJ properly relied upon evidence of Plaintiff's daily activities in evaluating whether his subjective testimony was credible. See, e.g., Smolen, 80 F.3d at 1284 (ALJ may consider claimant's daily activities in evaluating testimony as to severity of symptoms); Morgan, 169 F.3d at 600 (ALJ may discount claimant's testimony where his normal activities can transfer to the work setting); Fair, 885 F.2d at 603 (daily activities may be reason to discredit excess pain allegation where claimant spends substantial part of the day performing activities that may transfer to a work setting).

Furthermore, the records cited by the ALJ indicate that Plaintiff's medication and treatment have been relatively

successful in managing his symptoms. (AR 29). In February 2009, Dr. Powell indicated that Plaintiff's pain was related to his morbid obesity. (AR 600). However, on April 1, 2009, Plaintiff underwent gastric bypass surgery. After his surgery, Plaintiff began to exercise and lose extensive weight. (AR 615-635). By November 2009, Plaintiff had lost 150 pounds, and Plaintiff's physicians told him to return to a regular diet. (AR 649-650). Although Plaintiff continued to complain of back pain, the pain only moderately limited his activities. (AR 649). On January 18, 2010, Plaintiff was no longer taking narcotic pain medications. (AR 653). On April 8, 2010, Plaintiff's physician noted that he was doing well and going back to work. (AR 656).

Although Plaintiff gained back thirty pounds by March 2011, his total weight loss was still about one hundred pounds. (AR 660). On May 5, 2011, Plaintiff went to the emergency room complaining of increasing back pain and was given Flexeril, naproxen, and Vicodin for his pain. (AR 688-694). However, Plaintiff never saw a specialist for his pain and instead continued seeing his general practitioner. The record supports the ALJ's conclusion that Plaintiff's treatment was conservative in nature and relatively effective in treating his symptoms. After reviewing the ALJ's decision and based on the foregoing, the Court finds that the ALJ provided sufficiently clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective statements.

## VIII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 23, 2015

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE